**7 PAGES**
Gregory C. Nuti (CSBN 151754)
Christopher H. Hart (CSBN 184117)
Kevin W. Coleman (CSBN 168538)
NUTI HART LLP
6232 La Salle Ave, Suite D
Oakland, CA 94611
Telephone: 510-506-7152
Email: gnuti@nutihart.com
chart@nutihart.com
kcoleman@nutihart.com

Attorneys for MATHESON FLIGHT
EXTENDERS, INC.; MATHESON POSTAL
SERVICES, INC. and MATHESON
TRUCKING, INC.
Debtors-in-Possession

NUTI HART LLP
6232 La Salle Ave, Suite D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>MATHESON FLIGHT EXTENDERS, INC.,<br><br>Debtor. | Case No.: 22-21148<br><br>Chapter 11<br><br>**DCN: NH-82** |
| In re:<br><br>MATHESON POSTAL SERVICES, INC.<br><br>Debtor. | Case No.: 22-21149<br><br>Chapter 11 |
| In re:<br><br>MATHESON TRUCKING, INC.<br><br>Debtor.<br><br>   Affects All Debtors<br>X  Affects Matheson Flight Extenders<br>   Affects Matheson Postal Services Only<br>X  Affects Matheson Trucking | Case No.: 22-21758<br><br>Chapter 11<br><br>**MOTION TO REJECT INDUSTRIAL LEASE WITH BRIDGE POINT LONG BEACH LLC DATED AUGUST 6, 2021** (2400 E. Artesia Blvd., Long Beach, CA)<br><br>*Order Shortening Time Pending*<br>Date:  December 5, 2023 **[requested]**<br>Time:  11:00 a.m.<br>Place:  Department C<br>       501 I Street, 6th Flr., Crtrm. 35<br>       Sacramento, CA 95814<br>Judge: Hon. Christopher M. Klein |

NUTI HART LLP
6232 LA SALLE AVE, SUITE D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152

Matheson Flight Extenders, Inc. ("MFE") and Matheson Trucking, Inc. ("MTI", and together with MFE "Debtors"), debtors and debtors in possession in the above-captioned cases, hereby moves ("Motion") this Court for entry of an order authorizing MTI to reject a certain Industrial Lease with Bridge Point Long Beach LLC dated August 21, 2023 ("Lease") for premises commonly known as 2400 E. Artesia Blvd., Long Beach, CA  90805 ("Premises") effective as of December 1, 2023, the date of the filing of this Motion.  In support hereof, the Debtors respectfully state as follows:

## I.     FACTS

MFE and MPS filed voluntary Chapter 11 bankruptcy petitions on May 5, 2022 (the "Petition Date") in the United States Bankruptcy Court for the Eastern District of California, Sacramento Division ("Bankruptcy Court"), Case Nos. 22-21148 and 22-21149.  MTI filed a voluntary petition under Chapter 11 on July 14, 2022, Case No. 22-21758.  The Debtors' cases are currently jointly administered.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On May 25, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors for MFE and MPS ("Creditors Committee") (Doc. No. 87), and on August 8, 2022, the UST appointed the same members of the Creditors Committee to also serve as the Official Committee of Unsecured Creditors for MTI (Doc. No. 297).

MFE and MPS are in the business of sorting and transporting large volumes of mail across the United States under contracts with the United States Postal Service ("USPS") and other customers.  MTI provides senior management, legal, accounting, human resources, administrative and other services essential to MFE and MPS's business operations.

MFE has been providing services to the USPS since December 1998.  As of the filing of its bankruptcy case, MFE operated six (6) Surface Transfer Centers (STC) for the USPS located in: Atlanta, Georgia; Brandywine, Maryland; Chicopee, Massachusetts; Kansas City, Missouri; Long Beach, California; and Sacramento, California.  Over the last sixty (60) days, MFE has been in the process of closing down its STC operations.  In connection therewith, services to USPS at the Long Beach, California STC facility terminated on November 13, 2023.

MTI is the lessee under the real property lease where MFE provided USPS with STC services at the Long Beach facility. Anticipating the shut-down of operations, the Debtors retained Cushman & Wakefield ("C&W") in mid-September to assist them in finding replacement tenants at various facilities. *See* Order Approving Application to Retain Cushman & Wakefield as Real Estate Brokers [NH-74] filed September 30, 2023 [Doc. No. 1240]. At that time, the Lease appeared to be under-market, and therefore a potential source of value to the Debtors' estates if the Lease was assumed and assigned to a new tenant.

However, despite diligent efforts over a period of roughly two months, C&W has been unable to locate a suitable replacement tenant for the Long Beach STC facility. It communicated to the Debtors on or about November 30, 2023, that due to prevailing conditions in the Long Beach market and other factors, C&W did not believe that it was likely to identify a qualified replacement tenant for the Long Beach facility in the near term.

Rent and other charges under the Lease for the Long Beach STC facility exceed $800,000.00 per month. As noted, MFE is no longer generating revenue at the Long Beach STC facility. Due to the uncertainty surrounding the Debtors' ability to find a replacement tenant to take an assignment of the Lease, they have concluded that it is in the best interests of the estates to reject the Lease and surrender possession of the Premises at the earliest possible date in order to minimize the accrual of additional administrative claims.

On November 30, 2023, Bridge Point Long Beach LLC ("Lessor") was notified through counsel that the Debtors intended to file this Motion seeking rejection of the Lease retroactive to December 1, 2023. The Lessor was further informed that the Debtors expected to vacate the Premises and turn over the keys on or before December 5, 2023. The Debtors have paid all post-Petition rent and other charges due under the Lease through November 30, 2023.

//

//

//

//

NUTI HART LLP
6232 LA SALLE AVE, SUITE D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152

3

## II.     ARGUMENT

**A. Rejection is Warranted**

The decision to assume or reject an unexpired lease or executory contract is a matter within the "business judgment" of the Debtor. Under the "business judgment" test, the Court should approve a proposed rejection if it will benefit the estate. In re Chi-Fang Huang, 23 B.R. 798 (9th Cir. BAP 1982). The decision to reject should be approved unless the decision was made "in bad faith or is [a] gross abuse of [the trustee's] business discretion." Lubrizol Enterprise, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 S.Ct. 1285 (1986).

Here, the Debtors do not believe that the Lease has value for the estate or the creditors. MFE is no longer providing services to USPS at the Premises. Moreover, despite C&W's diligent efforts for over two months, there is little indication that value can be realized through assumption and assignment of the lease. Because MFE is not utilizing the Premises and seems unlikely to be able to realize value through assumption and assignment of the Lease, it has concluded that the ongoing burden of rent payments due under the Lease would yield no benefit to the estate. Therefore, the Debtors submit that rejection of the Lease is in the best interests of the estate and creditors.

**B. The Court Should Approve Rejection as of December 1, 2023**

The Debtors are seeking to have the Court's order approving the rejection operate retroactively to December 1, 2023, the date this Motion was filed. Bankruptcy courts have equitable power to authorize retroactive rejection of a lease where "exceptional" circumstances exist. In re At Home Corp, 392 F. 3d 1064, 1073-74 (2004). While there is no bright line test, the *At Home* case indicates that circumstances are "exceptional" when a debtor/trustee's actions are consistent with the goals Congress sought to achieve in according special treatment to commercial landlords in Bankruptcy Code section 365(d)(3) – namely, preventing landlords from being in a situation where they were not receiving rent payments and yet were still precluded from reletting the space over an extended period of time. *See* Id. at 1068-70.

NUTI HART LLP
6232 LA SALLE AVE, SUITE D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152

Throughout the pendency of these cases, the Debtors have acted consistent with the objectives of Bankruptcy Code section 365(d)(3). They have timely paid all post-Petition rent and other charges due under the Lease for occupancy of the Premises through November 30, 2023.

Moreover, the Debtors acted promptly to return possession of the Premises once it was determined that continued occupancy was not in the best interests of the estates. *At Home* and many subsequent cases focus on "whether the parties have facilitated or hindered the prompt return of the leased premises to the landlord when deciding whether to approve the rejection of a lease retroactive to an earlier date." Id.; In re Player's Poker Club, Inc., 636 B.R. 811, 823 (Bankr. C.D. Cal. 2022). The point in time when a landlord: (a) knows that a tenant is vacating, and (b) has physical access to the premises in order to begin the reletting process is the most important factor in determining when rejection should be deemed effective. Duke Realty Ltd. P'ship v. North Metro Mill Work Distribs. Inc. (In re Manis Lumber Co.), 430 B.R. 269, 280 (Bankr. N.D. Ga. 2009); Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 140 (D. Colo. 2003); In re O'Neil Theatres, Inc., 257 BR 806, 808 (Bankr. E.D. La. 2000); In re Amber's Stores, Inc., 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996); *See also* Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 137 (D. Colo. 2003) (approving retroactive rejection where debtor tenant had vacated the premises). As explained in the *Manis Lumber* case:

> In almost all cases, approval of rejection of an unexpired lease is a *pro forma* matter, especially when a trustee or debtor in possession is liquidating and is no longer occupying the premises. In such a circumstance, rejection occurs as a matter of course. Once the trustee or debtor in possession has communicated an unequivocal decision to reject the lease, the landlord knows that it is highly likely that rejection will occur and that reletting will be necessary. If the premises have been vacated so that the landlord may take possession, the landlord is effectively in the same position as if rejection had already occurred. *It can begin the process of inspecting the property, marketing it to prospective tenants, and negotiating a new lease. Unless a landlord shows that the absence of court approval of the rejection has prejudiced it in some way, the approval of rejection of a lease retroactive to the date that the landlord was effectively in a position to begin the reletting of the property is appropriate.* Manis Lumber, 430 B.R. at 280.

//

//

NUTI HART LLP
6232 LA SALLE AVE, SUITE D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152

Again, all rent and other charges have been paid through November 30, 2023. The Lessor was notified on November 30, 2023, that the Debtors intended to file this Motion to reject the Lease on December 1,[1] and to surrender possession of the Premises on or before December 5, 2023. The Debtors therefore have acted promptly to return control over the Premises to the Landlord once it was determined that continued occupancy of the Premises would burden the Debtors estates. And like the landlord in *Manis Lumber*, the Lessor here was free to inspect the Premises and commence its own efforts to relet the space no later than December 1, 2023. Accordingly, "exceptional" circumstances exist, and the Court should authorize rejection effective as of December 1, 2023.

**III.    NOTICE**

Pursuant to B.R. 6006(a), a debtor may move to reject an unexpired lease of real property by motion noticed to interested parties and the US Trustee. This Motion, the Notice of Hearing, and supporting Declaration of Charles Mellor are being served on the Lessor, the Lessor's Counsel, and the Creditors Committee. Notice of the Motion is also being served on the US Trustee and other parties requesting special notice.

//

//

//

//

//

//

//

---

[1]    It should be noted the courts have refused to accept landlords' arguments that because the automatic stay remains in effect during the pendency of a motion to reject, they cannot take steps to relet the premises, and therefore retroactive rejection is improper. <u>Adelphia Business Solutions, Inc v. Abnos</u>, 482 F.3d 602, 609 (2d Cir. 2007) (noting that a landlord in fact can take steps to locate a new tenant while the motion is pending and retains the right to seek relief from stay or set a deadline to assume or reject if a potential replacement tenant is found).

NUTI HART LLP
6232 LA SALLE AVE, SUITE D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152

## IV. CONCLUSION

WHEREFORE, MTI and MFE respectfully request that the Court grant this Motion and enter an Order:

1. Authorizing MTI to reject its lease with Bridge Point Long Beach LLC for the property commonly known as 2400 E. Artesia Blvd., Long Beach, CA 90805 retroactive to December 1, 2023; and

2. Granting such other and further relief as the Court may deem just and proper.

Dated: December 1, 2023

NUTI HART LLP

By: _/s/ Kevin W. Coleman_
Kevin W. Coleman
Attorneys for Matheson Flight Extenders, Inc., Matheson Postal Services, Inc., and Matheson Trucking, Inc.

NUTI HART LLP
6232 LA SALLE AVE, SUITE D
OAKLAND, CA 94611
TELEPHONE: 510-506-7152